CAMPBELL (BOYREAU v.). See Case No. 1,760.

---

## Case No. 2,355.

### CAMPBELL v. BROWN et al.

[2 Woods, 349.] [1]

Circuit Court, W. D. Texas. June Term, 1876.

ATTORNEY AND CLIENT — ACTION TO RECOVER MESNE PROFITS—MEASURE OF DAMAGES —OCCUPANT IN GOOD FAITH — COMPENSATION FOR IMPROVEMENTS.

1. Attorneys at law, in the exercise of their proper functions as such, are not liable for their acts when performed in good faith, and for the honest purpose of protecting the interests of their clients.

2. The rule for the measure of damages in actions for mesne profits is the fair rental value of the property.

3. If the fair rental value cannot be ascertained, then the rule of damages would be the

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

fair actual value of the property while in possession of the defendant, if prudently and judiciously managed.

4. No recovery can be had for profits accruing after the commencement of the action for mesne profits.

5. By the law of Texas, if a person acquires and holds possession of land in good faith, believing it to be his own, or to belong to the person of whom he holds it, he is entitled to be paid for the permanent and valuable improvements made by him thereon, though his title proves to be invalid.

6. But after the party having the better title brings suit to recover the property, the person in possession, or any one taking possession under the same title during the pendency of the suit, can no longer set up the plea of good faith, and cannot recover for improvements made after the commencement of the suit.

This was an action at law [by A. A. Campbell, administrator] to recover mesne profits. The case was this: Under judicial process for possession of a league of land, Hancock and West, acting as attorneys of one Connett, had been put into possession and had leased the land to one Nash, and continued to exercise a general superintendence for Connett. The intestate of the present plaintiff instituted suit against Nash to try the title, and recovered. Pending the suit, Connett, Nash's landlord, sold the property to Brown, who entered into possession. Hancock and West, as Connett's attorneys, were to have one-fourth of the property if successful, and the sale by Connett and Brown was made subject to this understanding. They continued to manage the litigation after Brown's purchase, and Brown acted under their advice and direction. After the termination of the suit against Nash, the plaintiff's intestate commenced this suit against Brown, Hancock and West for mesne profits. Hancock and West pleaded that they acted only as attorneys and were not amenable to an action, not being in possession in fact, and not having received the rents and profits.

A. M. Jackson, for plaintiff.

C. S. West, for defendants.

BRADLEY, Circuit Justice (charging jury). The first question to be considered is the liability of the defendants. There is no question as to the liability of Brown. It is contended by Hancock and West, however, that they have had no possession or use of the property, but that all they have had to do in relation to it has been in their professional capacity as attorneys-at-law, representing Connett originally, and subsequently Brown as his grantee. It is a general rule that attorneys-at-law, in the exercise of their proper functions as such, are not liable for their acts when performed in good faith and for the honest purpose of protecting the interests of their clients. The public interest demands this. If attorneys cannot act and advise freely and without constant fear of being harassed by suits and actions at law, parties could not obtain their legal rights.

If not free to advise and defend those who seek their aid, the laws are made in vain. Injustice and oppression would rule high-handed in the land. The untrammeled freedom and zeal, no less than the learning and ability of the members of the legal profession, are necessary to make them what they really are—the great body-guard of men's rights in society. It is as necessary to the public weal that they should be privileged from molestation by actions and suits in the courageous performance of their duty as it is that the representatives of the people in the legislature or the judges of the courts should be thus privileged. Hastings v. Lusk, 22 Wend. 410; Hodgson v. Scarlett. 1 Barn. & A. 232; Wright v. State, 18 Ga. 383; Hunt v. Printup, 28 .Ga. 297; Wigg v. Simonton, 12 Rich. Law, 583; Hargrave v. Le Breton, 4 Burrows, 2423. Unless, therefore, Hancock and West went beyond the line of their duty as attorneys for Connett, who was a resident of Missouri and unable to attend personally to his interests here, they are not liable in this action. The mode in which their compensation was provided for does not affect the question. Whether their fee was to be contingent on success or certain in amount makes no difference. Did they go outside of the line of their duty as attorneys? In this country the office of attorney includes that which is known in England as a solicitor, and his duties are not confined to acts done in the office or the court room, but extend to all those acts which are necessary to be done in the conduct of the litigation or legal business or transaction with which he is charged; for example, the making and serving of notices; the direction of officers of the law in the performance of their official acts; the supervision and direction of formal or judicial transfers of possession; the making of demands when necessary to be made; the collection of moneys; the making and delivery of leases; the examination of titles of an estate; the effecting of a sale or a purchase, and the general supervision of a business transaction which requires the superintendence of a person skilled in the laws. Where possession of an estate has been delivered by legal forms, under the direction of an attorney, or formally delivered to him in behalf of his principal; the retaining of possession afterwards by the principal, or by a person whom the attorney places in possession for him, does not make the attorney responsible for the acts of such person while in possession, unless, indeed, he conceals his principal and assumes the character of principal himself.

The next question to be considered is the amount of damages. The ordinary rule for the measure of damages in actions of this sort, is the fair rental value of the property, as the plaintiff's counsel has contended. If this cannot be ascertained, the next best rule is the actual value of the use of the property under prudent management. I do not remember any evidence in the case which showed any rental value. It does not appear that this property, or any similar to it in the neighborhood, had been let at a pecuniary rent, or, if it had, what the amount of the rent was. We can not tell, therefore, precisely what its rental value was. The plaintiff was given evidence of estimates made by witnesses of what they considered the property to be annually worth, based on their calculation of what could be actually made from it. But whether any person would have undertaken to pay a rent for it equal to the amount named by these witnesses may be a question. There are always risks attending the use of such a property and the demand for its products, which more or less affect the rent which parties are willing to give. And, then, no one is willing to give, in rent, all he expects to make from the property. What the defendant did actually make, we have some evidence to show from the testimony of Brown himself, and this will have considerable weight in establishing the value of the use during the period of his possession. What he actually did make, however, is not the measure of the plaintiff's right of recovery. This is not an action for an account of what he actually received; but for what the plaintiff might have received from a prudent use or renting of the property, had he not been deprived of its possession. The defendant may have had bad luck, or he may not have managed prudently. The plaintiff ought not to be saddled with his bad luck, or his unskillful or imprudent management. If the fair rental value can not be ascertained, you must ascertain as near as you can from the evidence, and give to the plaintiff the fair actual value of the property during the period it was in the possession of the defendant, if prudently and judiciously managed.

In making this estimate, you will make allowance for destruction caused by uncontrollable floods, which would necessarily have affected the value of the property had it been in the possession of the plaintiff himself. There can be no legal or actual perception of profits annihilated by the overwhelming powers of nature. Of course, you will consider the several parts of the property, the cultivated part and the timbered part, and the buildings and machinery in connection therewith; and will make due estimate of the value of the timber which was cut, as it stood on the ground. I do not know that I can aid you in making this estimate. You have heard all the evidence, and you will give it the weight which it deserves.

Some question has been made whether the timber cut for Brown's upper mill was cut before or after the commencement of the suit. If cut before, it will be included in the estimate; if cut since, it will not be. I have no note of what the evidence was on

this subject. You will have to depend upon your own recollection of it.

As to the claim for improvements placed on the property by the defendant, it is my duty to instruct you that he is not entitled to any allowance therefor. He took possession of the property whilst it was in litigation, and that precludes him. The law of Texas is, that if a person acquires and holds possession of land in good faith, believing it to be his own or to belong to the person of whom he holds it, he is entitled to be paid for the permanent and valuable improvements made by him thereon, though his title proves to be invalid. But after the party having the better title makes a judicial demand by bringing suit to recover the property, the person in possession, or any one taking possession under the same title during the pendency of the suit, can no longer set up the plea of good faith. After this he acts at his peril. The true owner, having done all he can do to get possession of his own, even to the point of resorting to the courts of justice, can no longer be charged with improvements over which he has no control, and which the unlawful possessor chooses to make. A wealthy possessor might otherwise, ruin the owner by making costly improvements which the latter does not want, and has no means to pay for. The possessor cannot even be allowed for renewal of fences, or rebuilding of houses, or replacement of machinery. He does it all at his own risk. Hard cases may, undoubtedly, arise under this rule. But hard cases can not control the law. No doubt the defendant Brown did suppose he had a good title, and no doubt his counsel, Hancock and West, honestly so advised him. But legal good faith cannot be averred where the real owner has already commenced his action for the recovery of the property.