## Commonwealth v. Rhodes

*Malcolm B. Petrikin*, for petitioner.

*William B. McClenachan, Jr.*, district attorney, and *Louis A. Bloom*, assistant district attorney, for Commonwealth.

MACDADE, J., December 15, 1937.—This is a petition upon the part of J. Leon Rabben, Esq., to set aside the costs of prosecution imposed upon him by the grand jury in the above case.

The petition was filed on October 12, 1937, and was in term time (September sessions, 1937).

Petitioner believes that the said grand jury was in error in imposing such costs upon him and assigns as reasons for such determination that:

"1. He is a member of the bar, duly admitted to practice law in the State of Pennsylvania, and in particular in the City and County of Philadelphia.

"2. In the course of said petitioner's practice, there came to the office of said petitioner in the City and County of Philadelphia one Vincent Scottoline, who requested legal advice relative to the possibility of arresting the above defendant, John M. Rhodes, on a charge of assault and battery by automobile, as a result of an automobile accident, in which Vincent Scottoline was a passenger in an automobile with which the automobile of the above defendant collided. The above conference took place in the early part of May 1937, at which time petitioner was informed of the following facts by the above-mentioned Vincent Scottoline:

"(a) That on February 21, 1937, Vincent Scottoline was a passenger in an automobile being driven by one Joseph Desiderio, proceeding north on Melrose Avenue, going from Chester to Philadelphia, at a rate of speed approximating 15 miles an hour.

"(b) That when the automobile driven by Joseph Desiderio was almost three quarters of the way past the intersection of Seventeenth Street with Melrose Avenue, on the outskirts of Chester, the said Vincent Scottoline observed the automobile driven by defendant, John M. Rhodes, coming directly toward the automobile in which he was a passenger, at a rate of speed approximating 45 miles an hour.

"(c) That the machine in which he was a passenger was struck by defendant's machine in the rear portion of the right side with such great force that both automobiles were driven completely across the highway and the auto-

mobile in which Vincent Scottoline was a passenger was thrown into the field bordering the right side of the road.

"(d) That the said Vincent Scottoline was immediately taken to the Crozer Hospital in Chester, where he was detained for a period of 18 days, until he recovered sufficiently from his injuries to return to his home.

"(e) That upon his discharge from the hospital he learned that the morning following the accident the above-named defendant had been discharged after a police hearing, even though he was not present at such hearing.

"(f) A member of the Philadelphia bar, one Joseph Price, had been representing Vincent Scottoline until he came to the office of your petitioner, desiring to have him as attorney.

"(g) That the physical appearance of the intersection where the accident occurred was such that any automobile proceeding west on Seventeenth Street, in like manner as defendant, could not see any traffic going north on Melrose Avenue, unless such automobile traveling on Seventeenth Street came to a complete stop at the intersection, and that the above defendant did not stop his car at such intersection, but, on the contrary, was driving at a highly excessive rate of speed.

"3. As a result of the above information your petitioner advised Vincent Scottoline that in his mind, from the facts related, it was evident that a criminal prosecution would lie against the above defendant, John M. Rhodes.

"4. Your petitioner had no personal knowledge of any of the facts involved, nor was he in any way involved in the accident, nor did he know defendant.

"5. Pursuant to such advice of counsel, given in his professional capacity during the relationship of attorney and client, the said Vincent Scottoline swore to the above facts in an affidavit made by himself before 'Squire James, at Lester, Pa. This affidavit was made in May 1937, and testimony was heard by the squire pursuant thereto, during the month of June 1937, and thereafter.

"6. The above-named 'Squire James held defendant, John M. Rhodes, in bail for court.

"7. The matter was before the grand jury on September 24, 1937, at which time the grand jury heard the testimony of Vincent Scottoline, Joseph Desiderio, and Emil Olszewski, the names of the latter two persons appearing on the indictment as witnesses.

"8. The name of J. Leon Rabben, Esq., did not appear upon the transcript in any manner whatsoever.

"9. One of the witnesses, upon being asked by the assistant district attorney as to the name of his attorney, informed him of the name of your petitioner, who was questioned by the district attorney as to why he had advised the criminal prosecution.

"10. Your petitioner stated that in his opinion a prima facie case of criminal assault and battery by automobile had been made out on the facts as stated above.

"11. At no time was your petitioner asked any questions as to who the prosecutor was in the case before the grand jury, nor was he given any opportunity to present any evidence as to who the actual prosecutor was.

"12. The grand jury ignored the bill and imposed the costs upon your petitioner.

"13. Your petitioner believes that he was not named on the bill as prosecutor, either by the district attorney or the grand jury."

In due course, testimony was taken upon the rule to set aside the costs and we then expressed an opinion that advice given in a professional capacity should not result in a penalty being imposed upon the attorney unless he advised an arrest in order possibly to influence any civil action involved. This does not appear to be a proven fact in the instant case. He apparently gave advice to his client in a professional capacity and in a bona fide manner. Even if there was mistaken zeal upon his part, not coupled with deceit or other improper conduct, he cannot be punished by imposition of the costs on him as a fine: Bird v. Wessels et al., 119 N. Y. Supp. 329.

Our determination is that this petitioner was acting in a professional capacity and bona fide and, therefore, cannot be visited with the costs of prosecution. This grand jury stepped outside its jurisdiction and committed error. The costs should have been imposed upon the prosecutor named on the indictment if it desired to ignore the charges against defendant. In any event it did not discharge its full duty when, under the facts of the instant case, it ignored the charges, for a prima facie case had been made out before it by the witnesses called. It is not the function of the grand jury to try the case; that should be left to the court and jury. All that needs to be done is to ascertain if a prima facie case has been made out. To do otherwise creates suspicion in the public mind that all is not well with the grand jury and invites severe criticism.

The relation of an attorney to his client is a responsible one and he should be untrammeled in giving honest, professional advice. Let us see what eminent authorities think of this professional relationship.

6 C. J. 631, §126, says:

"In order to constitute the relation a professional one and not merely one of principal and agent, the attorney must be employed either to give advice upon a legal point, to prosecute or defend an action in a court of justice, or to prepare and draft, in legal form, such papers as deeds, wills, contracts, and the like."

And further, in 49 C. J. 1315, §13, practice of law is said to include "legal advice, and counsel".

"The general implied authority of an attorney by virtue of his employment includes the doing on behalf of his client of all acts in or out of court necessary or incidental to the prosecution or management of the suit, or to the accomplishment of the purpose for which he has been retained." See also Gray v. Howell, 205 Pa. 211, and Kissick v. Hunter, 184 Pa. 174.

Advice given in a professional capacity should not result in a penalty being imposed upon the attorney.

The attorney for complainant should not have the costs assessed against him because he is in fact not the actual prosecutor.

A prosecutor is "One who prefers an accusation against a party whom he suspects to be guilty; [50 C. J. 371; Bouvier's Law Dictionary] one who instigates a prosecution, by making an affidavit charging a named person with the commission of a penal offense, on which a warrant is issued or an indictment or accusation is based . . . one who voluntarily makes an affidavit to procure the issuance of a warrant to arrest a party whom he accuses of a crime": 50 C. J. 797.

A complaint has been defined as a "charge or accusation against an offender, made by a private person or an informer to a justice of the peace or other proper officer, charging that accused has violated the law": 16 C. J. 286, §492.

It is a rule of common law of immemorial origin that, in the absence of statutory requirement to the contrary, complaints may be made by any person who legally can be a witness, and who has knowledge or information of any violation of the criminal law: United States v. Skinner et al., 27 Fed. Cas. No. 16, 309, p. 1123; 1 Brun. Coll. Cas. 446; Commonwealth v. Barr, 25 Pa. Superior Ct. 609.

In the instant case the attorney had no knowledge of the facts involved other than as related to him by his client. He did not prefer the accusation against defendant, nor did he take any affidavit or swear to any warrant charging defendant with any crime whatever, nor could such attorney be a witness against defendant. Petitioner never even saw defendant and certainly did not know him, and could not have been motivated by malice in giving such advice to a client.

A situation similar to that in the instant case often arises in suits against attorneys for malicious prosecution as a result of advising clients to institute criminal prosecution. Authorities are legion upon the proposition that,

if the advice of the attorney was given in a bona-fide manner, there is no liability upon his part.

"An attorney who goes no further than advising that the case is one justifying arrest, but who does not participate therein is not liable if the arrest turns out to have been unlawful": 25 C. J. 513, §94.

The authorities in neighboring jurisdictions agree with this theory.

"Mistaken zeal on the part of an attorney, not coupled with deceit or other improper conduct, cannot be punished by imposition of costs on him as a fine": Bird v. Wessels et al., supra.

Even "a beneficial interest in a cause of action does not render an attorney liable for costs where such beneficial interest consists of a right to a portion of the sum or property recovered as compensation for his services in the action": Barrton v. Naughton, 7 N. Y. Supp. 384.

"An attorney's negotiation for work to be done in a lawsuit is the act of an agent for a known principal, and for the expense of that service the attorney does not become personally responsible": 6 C. J. 625, §113.

An attorney is not liable where, in the institution or conduct of any suit or judicial proceeding, or in procuring the issuance of process, he acts merely as an attorney at the instance of his client and under his instructions: Williams v. Inman et al., 1 Ga. App. 321; Wigg v. Simonton, 12 Rich. 583 (S. C., 1860).

The rule applies equally whether the process is an execution or attachment against the property or the person of the debtor: Campbell v. Brown et al., 2 Woods 349, 4 Fed. Cas. 1158; Hunt v. Printup, 28 Ga. 297; Dawson v. Buford et al., 70 Iowa 127; Farmer v. Crosby et al., 43 Minn. 459.

In Ford et al. v. Williams, 13 N. Y. 577, the court said (p. 584):

"In general, all who aid and abet the commission of a trespass are liable jointly or severally, at the election of the party entitled to the action. But where one acts only

in the execution of the duties of his calling or profession, and does not go beyond it, and does not actually participate in the trespass, he is not liable, though what he does may aid another party in its commission."

Continuing the comparison with a suit for malicious prosecution we find that:

An attorney is not liable under any circumstances to an action for malicious prosecution where he has acted in good faith in the prosecution of his client's rights. And where he is actuated only by motives of fidelity to his trust, he ought not to be held liable, although he may have entertained a different opinion as to the justice or legality of the claims. So for obvious reasons if probable cause existed for the prosecution, he cannot be held liable, although he knew that his client was actuated by malicious motives.

The public interest demands this. If attorneys cannot act and advise freely and without constant fear of being harassed by suits and actions at law, parties could not obtain their legal rights. If not free to advise and defend those who seek their aid, the laws are made in vain. Injustice and oppression would rule high-handed in the land. It is as necessary to the public weal that they be privileged from molestation by actions and suits in the courageous performance of their duty as it is that the representatives of the people in the legislature, or the judges of the courts, should be thus privileged. See Campbell v. Brown et al., supra.

It has been thoroughly established by a long line of decisions that the court has a perfect right to set aside so much of the verdict of the grand jury as imposes costs.

The court may set aside a verdict of acquittal, so far as it imposes costs on the prosecutor: Guffy v. The Commonwealth, 2 Grant 66 (1853) ; Commonwealth v. Doyle, 16 Pa. Superior Ct. 171; Commonwealth v. Charters, 20 Pa. Superior Ct. 599 (1902) ; Commonwealth v. Kocher, 23 Pa. Superior Ct. 65; Commonwealth v. Chartiers Ry., 28

Pa. Superior Ct. 173; Commonwealth v. Shaffer, 52 Pa. Superior Ct. 230 (1913).

The courts have exercised this power to set aside costs imposed by either a grand or petit jury upon various grounds, some of which are enumerated in Commonwealth v. Kocher, supra:

"The control of the costs, given to the grand and petit juries, is a discretionary power, subject to supervision by the court. . . .

"The supervisory power of the court on this subject was considered by the Supreme Court in Guffy v. Com., supra. In that case, the court directed a verdict of not guilty, and the jury, being instructed to dispose of the question of costs, placed them on the prosecutor. A rule to show cause why the verdict as to costs should not be set aside on the ground that there was nothing in the testimony to show that the prosecutor behaved improperly, was made absolute, and this was affirmed by the Supreme Court. Mr. Justice Lewis, who delivered the opinion of the court, in discussing the grounds on which the imposition of costs on a prosecutor might properly be set aside, suggested, as sufficient, (1) naming as prosecutor one who was not such, who had no notice of the proceeding, and against whom there was no evidence; (2) naming, without evidence, the justice who issued the warrant, the constable who served it, or the district attorney who prosecuted; (3) the death, before trial, of material witnesses for the commonwealth."

In the case at bar, there was no evidence presented to show that this petitioner was in fact the prosecutor.

The view of the above-cited case has been upheld by the courts in this county in Commonwealth v. Hayward, 4 Del. Co. 569, in which case costs were imposed upon Charles S. Phipps, who was found by the jury to be the prosecutor. The court said:

"The evidence upon the trial showed that he was not the prosecutor, and it appears by the record that another person made the complaint upon which the warrant is-

sued. He would appear to be no more than a witness in the case. He was, no doubt, instrumental in furnishing the Commonwealth with most of the evidence necessary to sustain the prosecution, but this did not constitute him the prosecutor. . . . The jury may have considered him officious and, therefore, deserving of some punishment, but when they undertook to inflict it, by means of imposing half the costs upon him, they exceeded their powers, in our opinion. . . . a further examination of the question satisfies us that the weight of authority establishes the right of such interference where the facts of the case warrant it."

To the same effect is Commonwealth v. Baltzby, 3 Pa. C. C. 73.

We have been able to find only one case in this State where a jury imposed costs upon the attorney for the prosecutor, and in that case the costs were set aside. The case referred to is Commonwealth v. Nowak, 80 Pitts. 197, in which the jury placed the costs upon the prosecutrix's attorney, after a directed verdict of not guilty. The court said:

"There is no doubt that the jury has the right to look beyond the record and determine who the real prosecutor is and place the costs upon him. However, in this case, upon reviewing the testimony as a whole we are not satisfied that Mr. Simon did more than act in his capacity as attorney and advise his client that she had a right to bring an action for perjury.

"We, therefore, do not believe that the jury was justified in placing the costs of the prosecution upon J. I. Simon."

We may add in conclusion that, even if the costs were assessed against the prosecutor properly named in the instant case, the court should still set aside such a verdict, since the prosecution was begun in good faith and upon reasonable and sufficient grounds.

When a prosecution is not trifling, but of grave character; when it is not unfounded, but based upon prob-

able cause; and when there is no evidence of malice in the prosecution, a verdict for costs against the prosecutor should be set aside: Commonwealth v. Plymouth Twp., 11 Luz. L. R. Rep. 138 (1902); Commonwealth v. Shoff, 22 Lanc. 73 (1904); Commonwealth v. Doyle, supra; Commonwealth v. Shaffer, supra; Commonwealth v. Newhouser et al., 37 Lanc. 7 (1919).

"The prosecutor having had good grounds for its prosecution should not have been made liable for any portion of the costs": Commonwealth v. Rodgers, 31 York 28 (1917); Commonwealth v. Mikula, 38 Montg. 115, 2 D. & C. 170 (1922); Commonwealth v. Thomas, 20 D. & C. 60; Commonwealth v. Dickinson, 62 Pa. Superior Ct. 468.

In Commonwealth v. Doyle, supra, where costs were assessed against a justice of the peace who had notified a constable to issue a warrant for a liquor law violation, the court said, with reference to the justice of the peace:

". . . there is no question of that tribunal's power to set aside these verdicts so far as they apply to P. F. Devine, if it concludes that he acted upon well founded grounds of belief in notifying the constable of an offense which ought to have been investigated, and he is entitled to the presumption that he did so act. . . . and where there is no evidence of malice in the prosecution, it is the duty of the court to set aside the verdict against the prosecutor for the costs: Guffy v. Commonwealth, 2 Grant's Cases, 66; Wadlinger on Costs, secs. 192, 193, and cases there cited."

Commonwealth v. Kocher, supra, said with reference to setting aside the costs where the prosecution was instituted upon reasonable grounds:

"In short, this is the duty of the court in all cases where there is nothing in the testimony to show that the prosecutor behaved improperly." To the same effect are the following cases: Commonwealth v. Sears et al., 15 Lanc. 340; Commonwealth v. Mundis, 2 Chester 381; Common-

wealth v. Curren, 9 Phila. 623; Connolly v. Lackawanna County, 1 Pennsylvania C. C. 26.

In Commonwealth v. Deeg, 25 Dist. R. 856, it is said:

"There is no doubt as to the power of the court to set aside a finding of this kind, if it is shown to have been unwarranted by the facts and circumstances of the case, and if it would work an injustice to the party ordered to pay costs: Com. v. Charters, 20 Pa. Superior Ct. 599." In the Deeg case the costs were assessed against the committing magistrate and the court said in conclusion:

"We are, therefore, bound, on this application, to see that no injustice is done him individually, and that no improper interference shall be had with his performance of official duties by this unusual procedure".

In the instant case, there was sufficient cause for the prosecution in view of the facts as presented by the prosecutor. As a matter of fact, the committing magistrate, Justice of Peace James, in order to assure himself that the facts as presented in the petition were sufficient to make out a prima facie case, presented such facts to E. Leroy VanRoden, Esq., assistant district attorney for this county, who assured him that these facts were not only sufficient, but would probably result in a conviction of defendant. Surely no aspersions can be cast upon the advice given by petitioner when an assistant district attorney of this county confirms the opinion he had given. It, therefore, became the duty of the district attorney's office to protect this petitioner and not have him mulcted with the costs of prosecution. Attorneys should be permitted to act and advise their clients freely and without constant fear of being harassed by the imposition of costs of prosecution upon them; otherwise parties cannot obtain their legal rights.

It is certainly necessary that attorneys at law who give advice in their professional capacity should do so without fear of being penalized for so doing; otherwise, how could there be a proper administration of justice?