ROBERT L. GIULIANI and INGE E. GIULIANI, Plaintiffs-Appellants, *v.* WALTER G. CHUCK, Defendant-Appellee

NO. 6497

DECEMBER 1, 1980

HAYASHI, C.J., BURNS, J. AND CIRCUIT JUDGE AU IN PLACE OF ASSOCIATE JUDGE PADGETT, DISQUALIFIED

OPINION OF THE COURT BY BURNS, J.

Robert L. and Inge E. Giuliani, plaintiffs below, appeal the granting of summary judgment in favor of Walter Chuck, defendant below, in their tort action against him. The questions on appeal are whether any genuine issue of material fact existed and whether defendant was entitled to judgment as a matter of law. *Technicolor, Inc. v. Traeger*, 57 Haw. 113, 118, 551 P.2d 163, 168 (1976); rule 56, Hawaii Rules of Civil Procedure (HRCP).

For purposes of this appeal, the facts and inferences drawn from them are viewed in the light most favorable to the Giulianis. *Iuli v. Fasi*, 62 Haw. 184, 613 P.2d 653 (1980).

In 1973 the Giulianis, as buyers, entered into a Deposit, Receipt, Offer and Acceptance agreement (DROA) with Henry Chun Hook Dang (Dang), as seller, involving residential property in Kailua, Hawaii.[1] Pursuant to the DROA, the Giulianis paid a $1,000.00 deposit to Dang.

Dang's attorney, Defendant Walter Chuck (Chuck), a lawyer licensed to practice in Hawaii, prepared documents necessary to effect the sale.[2] The documents Chuck prepared did not conform to the terms in the DROA.[3] The Giulianis refused to sign the documents and made unsuccessful attempts to cause Chuck to reform the documents to conform to the DROA prior to the scheduled closing date (January 15, 1974).

Chuck, by letter of February 6, 1974, advised the Giulianis that their $1,000.00 deposit was forfeit because they had breached the DROA.[4] The Giulianis tried to negotiate the return of the deposit but did not succeed.

In June 1974, the Giulianis sued Dang in district court for rescission of the contract and for return of their $1,000.00. They won. Dang appealed. The Hawaii Supreme Court affirmed the district court's judgment in a memorandum opinion. The Giulianis collected on their judgment.

---

[1] In pertinent part, the DROA stated that:

Buyer agrees to pay said purchase price as follows: $10,000 in cash including deposits herein and balance by way of agreement of sale for 3 years at 8% simple interest with monthly payments at least $566.67. At the end of this period, seller agrees to finance buyer with a 1st mortgage requiring 8% interest for 30 years on the remaining balance. . . .

[2] In pertinent part, the DROA stated that:

Buyer shall pay for the cost of drafting the agreement of sale, promissory note. . . .

[3] The promissory note drafted by Chuck called for payment of the total purchase price within three years. No agreement to finance buyer with a first mortgage was presented to the Giulianis.

[4] The record does not contain a January 12, 1974 letter from the Giulianis to Chuck, which Chuck refers to in his letter as the basis for his allegation that the Giulianis had breached the DROA agreement.

After they obtained the district court judgment, the Giulianis filed this suit in circuit court against Chuck. Their amended complaint alleged the above facts and that:

The Defendant willfully usurped the Plaintiffs' rights in the DROA contract and denied the Plaintiffs access to their $1,000.00. The Defendant compelled Plaintiffs to needlessly enter into litigation to defend their property and rights which, in turn, caused Plaintiffs to suffer mental anguish as well as deprivation of enjoyment over a long period of time. All this inflicted needless harm upon the Plaintiffs. These acts by the Defendant were such as to amount to wanton disregard for the rights, feelings, and personal property of the Plaintiffs and for that reason, Plaintiffs claim;

General Damages against the Defendant in the sum of EIGHTY FIVE THOUSAND DOLLARS ($85,000.00) and

Punitive Damages against the Defendant in the sum of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

Chuck's answer denied the gravamen of the amended complaint and raised the separate defenses that he owed no duty to plaintiffs and that plaintiffs had already received their remedy in the action against Dang.[5]

Chuck filed a motion for summary judgment and claimed entitlement to summary judgment because:

1. The amended complaint failed to state a claim upon which relief could be granted, i.e., Chuck owed no duty to the Giulianis; and

2. The matters complained of were done by Chuck in the appropriate and legal course of Chuck's representation of his client Dang, i.e., Chuck did not breach whatever duty, if any, he owed to Giuliani.

The lower court granted Chuck's motion after a hearing. The transcript of that hearing makes it clear that the basis of the court's ruling was its conclusion that the Giulianis had failed to establish any duty owed by Chuck to them. The Giulianis filed a HRCP, rule 60, motion for reconsideration,

---

[5] The latter has not been argued on this appeal.

which the lower court denied after a hearing. In denying the latter motion, the court stated that Chuck owed no duty to the Giulianis and that the district court's decision in the Giulianis' action against Dang indicated that Chuck had sufficient reason to have advised his client Dang to take the actions that he did.

Where the defendant is the moving party, the defendant is entitled to judgment as a matter of law if there is no genuine issue as to any material fact and if, viewing the record in the light most favorable to the plaintiff, it is clear that the plaintiff would not be entitled to recover under any discernible theory. *Abraham v. Onorato Garages*, 50 Haw. 628, 446 P.2d 821 (1968).

On this appeal, the Giulianis rely on HRS § 663-1[6] and the case of *Campbell v. Brown*, 2 Woods 349 (Texas 1876), as authority sufficient to establish that an attorney, while representing a client, has a duty to refrain from committing tortious acts against third parties. They argue that the allegations of their amended complaint are sufficient to establish fraud, misrepresentation, interference in and usurpation of their contractual rights. They assert that the trial court erred in finding that the district court's decision in *Giuliani v. Dang* contained sufficient reason as a matter of law for Chuck to have advised his client to take the actions that he did.

Chuck argues that he had no duty to the Giulianis under any discernible theory under any set of facts within the parameters of their allegations and that if he had a duty his actions did not constitute a breach of that duty.

## I. DUTY.

The rule of law that an attorney representing a client may be held personally liable to an adverse party or a third person

---

[6] § 663-1 *Torts, who may sue and for what*. Except as otherwise provided, all persons residing or being in the State shall be personally responsible in damages, for trespass or injury, whether direct or consequential, to the person or property of others, or to their spouses, children under majority, or wards, by such offending party, or his child under majority, or by his command, or by his animals, domestic or wild; and the party aggrieved may prosecute therefor in the proper courts. [Citations omitted.]

who sustains injury as a result of an attorney's intentional tortious acts is well-settled. *Hoppe v. Klapperich,* 224 Minn. 224, 28 N.W.2d 780 (1947), *Greenwood v. Mooradian,* 137 Cal. App. 2d 532, 290 P.2d 955 (1955), *Newburger, Loeb and Co., Inc. v. Gross,* 563 F.2d 1057 (2nd Cir. 1977). *See Warner v. Roadshow Attractions Co.,* 56 Cal. App. 2d 1, 132 P.2d 35 (1942).

The fact that there are limitations on the extent to which an attorney can go in his or her representation of a client is clearly stated in the Code of Professional Responsibility (CPR), which is made applicable to all Hawaii attorneys by rule 16.2 of the Rules of the Supreme Court of the State of Hawaii.

## II.  PRIVILEGE.[7]

We are aware of the need to allow attorneys the freedom to represent their clients zealously within the bounds of the law. CPR, canon 7. We recognize a presently undefined area of privilege where an attorney's actions will be deemed justifiable under the circumstances and he or she shall not be held liable for his or her actions.

## III. FACTS ON THE RECORD.

Although the complaint in this case was filed on November 18, 1975 and Chuck's motion for summary judgment was filed a year later on November 9, 1976, the factual record is very limited. Chuck's formal discovery was limited to the taking of Mr. Giuliani's deposition and this deposition is not part of the record on appeal. The Giulianis conducted no formal discovery. Chuck did not testify in *Giuliani v. Dang* and the transcript of that trial is not a part of the record in this case. Chuck's motion for summary judgment was not accompanied by any affidavits. The record does not contain any affidavits by Chuck or Dang.

---

[7] Restatement, Second, Torts § 890. *Privileges.* One who otherwise would be liable for a tort is not liable if he acts in pursuance of and within the limits of a privilege of his own or of a privilege of another that was properly delegated to him.

We disagree with the lower court's decision that the district court's decision in *Giuliani v. Dang* indicates, as a matter of law, that Chuck had sufficient reason to have advised his client to refuse to refund the Giulianis' $1,000.00 deposit. All that decision indicates is that for undefined reasons rescission of the DROA contract was appropriate and, therefore, that the Giulianis were entitled to a refund of their $1,000.00 deposit.

We disagree with the suggestion that Chuck's February 6, 1974 letter refutes the Giulianis' cause of action as a matter of law. The fact that Chuck stated in writing that he had a legitimate basis for his actions does not make it so. Had he done so under oath then possibly the Giulianis would have been required to respond with some competent evidence showing that there is a genuine issue as to the basis for Chuck's actions. *See* 10 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil § 2727. Such is not the case here so we do not reach that question.

IV. THE CAUSE OF ACTION ALLEGED.

In our view of this case, because of the scarcity of facts on the record, the primary issue raised by Chuck's motion for summary judgment was whether or not the complaint stated a claim upon which relief could be granted. *See* HRCP, rule 12(b)(6), and 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil § 1356. Stated another way, the issue was whether the complaint contained a short and plain statement of the claim showing that the plaintiff was entitled to relief. *See* HRCP, rule 8(a).

The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil § 1357. A complaint is not subject to dismissal with prejudice unless it appears to a certainty that no relief can be granted under any set of facts that can be proved in support of its allegations. *Id.* § 1215. The rules do not require technical exactness or draw refined inferences against the pleader; rather, they require a determined effort to understand what the pleader is attempt-

ing to set forth and to construe the pleading in his favor. This is particularly true when a court is dealing with a complaint drawn by a layman unskilled in the law.[8] *Id.* § 1286.

In our view, the essence of the Giulianis' amended complaint is that Chuck intentionally and improperly refused to return their $1,000.00 deposit. Therefore, the amended complaint is sufficient to state a cause of action for intentional harm to a property interest, a cognizable cause of action sounding in tort. Restatement, Second, Torts § 871.

> One who intentionally deprives another of his legally protected property interest or causes injury to the interest is subject to liability to the other if his conduct is generally culpable and not justifiable under the circumstances.

We further find the Giulianis' amended complaint insufficient to allege any other cause of action.

We especially find the Giulianis' amended complaint insufficient to allege a cause of action in fraud. The party asserting such a claim must have relied on the claimed misrepresentation. *Kang v. Harrington*, 59 Haw. 652, 587 P.2d 285 (1978), *Peine v. Murphy*, 46 Haw. 233, 377 P.2d 708 (1962). Here, the facts as alleged by the Giulianis establish quite the contrary. Rather than relying on the documents prepared by Chuck or any of his statements, the Giulianis refused to execute the documents and pursued their legal remedies vigorously.

## V. CONCLUSION

Pleadings are not an end in themselves. They are only a means to assist in the presentation of a case to enable it to be decided on the merits. 6 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil § 1473. This opinion states the law applicable to this case. What is missing are the relevant facts. We therefore reverse and remand this case for further proceedings consistent with this opinion.

---

[8] In this case the Giulianis have acted *pro se*.

*Robert L. Giuliani, pro se,* for plaintiffs-appellants.
*Renton L. K. Nip (Huddy T. Lucas* on the brief) for defendant-appellee.

DISSENTING OPINION OF CIRCUIT JUDGE AU

The majority of this court reverses an order of the trial court which granted summary judgment to the defendant. The majority reasons that the factual record is insufficient to support summary judgment, and the amended complaint is sufficient to state a claim for an intentional harm to plaintiffs' property interest, so far as they allege an intentional and improper refusal, by defendant, to return their $1,000.00 earnest money deposit. The defendant has admitted all of the material allegations of the amended complaint for the purpose of the motion. (Record at 145; 159.)

I dissent from the foregoing holding of the majority. My views are stated hereinbelow.

I am of the opinion that all of the material facts, which are stated in the majority opinion, together with such reasonable inferences as may be drawn therefrom in the light most favorable to the plaintiffs, are sufficient for a proper resolution of the question of liability, in favor of the defendant.

The majority holds the plaintiffs' claims actionable under § 871 of the Restatement, Second, Torts (1979). That section is but a particularized application of the general principle for intentional tort, as set forth in § 870, and the comments of the reporters of the Restatement thereunder are applicable to § 871.

Section 870 reads as follows:

§ 870. Liability for Intended Consequences — General Principle

One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed al-

though the actor's conduct does not come within a traditional category of tort liability.

But, as the reporters comment, it is obvious that not every intentionally caused harm deserves a remedy in tort, and the determination of which ones should be the subject of tort liability is made by resorting to an evaluative process in balancing the conflicting interests of the litigants, in light of the social and economic interests of society in general. *Id.* at 281.

The balancing process, therefore, necessarily involves the court in an evaluative process, hereunder discussed, and in a determination of the actor's conduct as being both "culpable" and "unjustifiable", in the sense that it must be improper and wrongful; "it must be blameworthy, not in accord with community standards of right conduct" and "it must also be not excusable or justifiable; a privilege should not be applicable". *Id.* at 282. They further comment:

It is the plaintiff's responsibility to satisfy the appropriate agency that the [standards have] been breached . . .

*Id.* at 280.

These two terms, not "excusable or justifiable", describe the evaluative process in balancing the societal interests before liability may be imposed. It must take the court into an analysis of a set of four factors, which are stated by the reporters, as follows:

This evaluative process therefore involves utilization of all three of the blackletter terms. When analyzed, it breaks down into a set of four factors. These include: (1) the nature and seriousness of the harm to the injured party, (2) the nature and significance of the interests promoted by the actor's conduct, (3) the character of the means used by the actor and (4) the actor's motive. The first factor is of primary concern in applying the blackletter term, injury, and the second factor is of primary concern in applying the blackletter term, not justifiable; the first, third and fourth factors are of substantially equal significance in applying the blackletter term, culpable. The balancing process, however, necessarily involves

one single determination, and it cannot be neatly divided into several separate, mutually exclusive determinations.

For one intentional tort — nuisance, when it involves intentional invasion of another's interest in the use and enjoyment of land — the single word "unreasonable" is used to describe the balancing process. (See §§ 826-829A). For the tort of interference with contractual relations, the word "improper" is used. (See § 767). A single term, like "wrongful," might have been used here. But the traditional dichotomy in intentional torts of prima facie tort and privilege suggests the desirability of using more than one term.

*Id*. at 282-283.

All of this puts the imposition of liability under Restatement, § 871, in its proper perspective, to wit: That the determination of initial liability depends upon an interplay of several factors and a finding of privileges depends upon a consideration of much the same factors. But the majority holds the amended complaint legally sufficient and it recognizes a "presently undefined area of privilege where an attorney's actions will be deemed justifiable under the circumstances and he or she shall not be held liable for his or her actions [at section II of majority]", without indicating how the bases of such undefined privileges may be related to the plaintiffs' legally protected interests.

I do not understand the majority as having undertaken a determination of initial liability in this case by the evaluative process, suggested by the reporters of the Restatement, under either §§ 870 or 871. For the same freedom of action of an attorney under CPR, canon 7, that the majority mentions in its opinion, does form the basis of an established privilege, under the facts and circumstances of this case, and. to my way of thinking, renders defined that which the majority regards as undefined.

As hereinbefore mentioned, § 871 is but a particularized application of § 870. The latter section is described, by the reporters, as stating a principle sometimes called "an innominate form of the action of trespass on the case. . . . [*Id*. at 280]" which is to say that the law, in this area, has not

fully congealed but is still in a developing stage. And in "some cases in which the claim may be entirely novel", they comment, "the court may decide to limit liability to the situation in which the defendant acted for the purpose of producing the harm involved." *Id.* at 280.

I so view this case, and do not find, under the admitted and uncontroverted facts any "generally culpable and not justifiable" conduct of the defendant, which might subject him to liability under the circumstances. As the defendant explains it, he refused, or advised refusing the return of the $1,000.00 to plaintiffs because he deemed plaintiffs to have breached their DROA contract and (albeit, later held erroneous by our supreme court), under the terms and conditions thereof, felt Dang legally entitled thereto. Based upon the admitted and uncontroverted facts, and the reasonable inferences drawn therefrom, I am of the opinion that the defendant had not acted "for the purpose of producing the harm involved".

Therefore, utilizing the evaluative process in balancing the conflicting interests of the litigants and the societal interests, in the manner suggested by the reporters of the Restatement, I am of the conclusion that the defendant is entitled to judgment as a matter of law, upon the factual record of this case, and the reasonable inferences to be drawn therefrom in the light most favorable to the plaintiffs.

I, therefore, dissent.