***FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER***

Electronically Filed
Supreme Court
SCWC-12-0000025
10-APR-2019
09:32 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

GORAN PLEHO, LLC, a Hawai'i Limited Liability Company (dba
Resorts Limousine Services), GORAN PLEHO and ANA MARIA PLEHO,
Petitioners/Plaintiffs-Appellants/Cross-Appellees,

vs.

DAVID W. LACY, LACY AND JACKSON, LLLC,
a Hawai'i Limited Liability Law Company,
Respondents/Defendants-Appellees/Cross-Appellants,

and

DRAGAN RNIC, Respondent/Defendant-Appellee.

_____

SCWC-12-0000025

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000025; CIV. NO. 06-1-101K)

APRIL 10, 2019

McKENNA, POLLACK, and WILSON, JJ., WITH RECKTENWALD, C.J.,
DISSENTING, WITH WHOM NAKAYAMA, J., JOINS

OPINION OF THE COURT BY POLLACK, J.

We are called upon to determine whether Hawai'i's

unfair or deceptive acts or practices statute, which on its face

applies to the conduct of any trade or commerce, nevertheless

excludes from its reach a lawyer who actively facilitated the

sale of one company to another because of the lawyer's status as a legal professional. Our caselaw indicates that this conduct is in fact the type of participation in a business transaction that the law was intended to address, and the lawyer's conduct cannot be shielded from liability merely because it amounted to or was comingled with legal services. Further, the statute itself directs this court when construing the law to consider the interpretation of analogous federal statutes by federal courts and agencies. This guidance from federal decisions is consistent with the plain language and legislative history of the statute, and any concern that applying the statute in this context would invade this court's inherent authority to regulate the legal profession is unfounded. We accordingly conclude that the alleged conduct in this case, which may or may not have involved the actual practice of law, properly states a claim for relief under our unfair or deceptive acts or practices statute.

## I. Background and Procedural History

In 2005, David W. Lacy, Esq., of the firm Lacy & Jackson LLLC, represented Goran and Ana Maria Pleho (the Plehos) and their company, Goran Pleho LLC (GPLLC) (collectively, the Pleho Parties), in a transaction to purchase Dragan Rnic's company, Resorts Limousine Services (RLS). Several months later, the Pleho parties initiated the present action in the Circuit Court of the Third Circuit (circuit court) alleging a

number of claims against Rnic, Lacy, and Lacy & Jackson LLLC in connection with the transaction.

In a second amended complaint, the Pleho parties alleged that Lacy and Lacy & Jackson LLLC (collectively, the Lacy parties) did not fully disclose the extent of their contemporaneous attorney-client relationship with Rnic at the time of the sale. The complaint alleged that, although Lacy was aware Rnic had previously agreed to sell RLS to a third party for only $800,000, Lacy had advised the Pleho parties to purchase the company for $1,500,000. The Pleho parties further claimed that Lacy had falsely informed them that an independent appraisal of RLS was not possible because of the company's unique nature and that the agreed-upon purchase price was well below RLS's true fair market value of $2,000,000. The complaint stated that, after the Plehos entered into the purchase agreement as Lacy had advised, they learned that Rnic had misrepresented various factors related to the value of the company. The Pleho parties then obtained an independent appraisal, the complaint continued, which concluded RLS's fair market value at the time of the sale was only $128,000.

The Pleho parties alleged that the Lacy parties' conduct in connection with the transaction constituted, inter alia, "unfair and deceptive trade practices" in violation of

Hawaii Revised Statutes (HRS) Chapters 480 and 481A.[1]  Before trial, the Lacy parties moved for partial summary judgment on the Plehos' HRS Chapters 480 claims, arguing that the conduct alleged in the complaint amounted to the "actual practice of law," which was beyond the scope of the consumer protection statutes.[2]  The circuit court granted the motion without written explanation.[3]  After trial, the parties filed cross-appeals to the Intermediate Court of Appeals (ICA) from the circuit court's final judgment.

Among other issues raised on appeal to the ICA, the Pleho parties challenged the circuit court's grant of partial

---

[1]     The Plehos' Second Amended Complaint alleged as follows:

**Count VII (UNFAIR AND DECEPTIVE TRADE PRACTICES)**

. . .

54. The acts and omissions of Defendants DAVID LACY, LACY & JACKSONS, LLLC, and DRAGAN RNIC described herein and such other conduct as may be established at trial constitute one or more counts of unfair and deceptive trade practices under Hawaiʻi Revised Statutes Chapters 480 and 481A.

Insofar as HRS Chapter 481A serves primarily to clarify the prohibition on deceptive trade practices contained in HRS Chapter 480, we address the statutes together, and all references to the Pleho parties' HRS Chapter 480 claims encompass their claims under both statutes.

[2]     The circuit court had previously dismissed GPLLC's claims based on HRS Chapters 480 and 481A, reasoning that the company was not a "consumer" authorized to bring suit under the statutes because the law limits the term to only "natural persons."  (Citing HRS §§ 480-1 and 480-2(d).)

[3]     Although the circuit court's order did not explain the court's reasoning for granting the Lacy parties' motion, the transcript from the hearing on the motion indicates that the court was primarily concerned with whether HRS Chapter 480 applied to the practice of law.

summary judgment on their HRS Chapters 480 claims in favor of the Lacy parties.  The Pleho parties argued that a lawyer who deceives a client about the value of a company the client wishes to purchase commits both malpractice and deceptive trade practices.

In an amended memorandum opinion, the ICA stated that the Plehos' argument on appeal raised for the first time the allegation that "Lacy engaged in unfair or deceptive trade practices within the context of the practice of law" as opposed to "within the context of his role in the commercial purchase and sale of the business."[4]  The ICA stated that it therefore need not address the issue.  Nevertheless, the ICA proceeded to reject the Pleho parties' argument that HRS Chapter 480 applied to Lacy's conduct in his capacity as a practicing attorney, citing case law from other jurisdictions supporting the proposition that the regulation of attorneys does not fall within the parameters of consumer protection laws.[5]

The Pleho parties assert on certiorari, inter alia, that nothing new was added to their HRS Chapter 480 claim on appeal, that the ICA did not cite Hawaiʻi case law, and that the

---

[4]    The ICA's amended memorandum opinion can be found at Goran Pleho, LLC v. Lacy, No. CAAP-12-0000025, 2016 WL 4082346 (Haw. App. Aug. 26, 2016).

[5]    The ICA also affirmed the circuit court's dismissal of GPLLC's HRS Chapter 480 claim on the grounds that the company was not a "consumer" entitled to recover under the statute.

cases the ICA did cite do not support barring their claims under HRS Chapter 480 merely because Lacy was their lawyer. Thus, the Pleho parties argue that the ICA should have reinstated their HRS Chapter 480 claims.

## II. Standard of Review

"The interpretation of a statute is a question of law which this court reviews de novo." Sierra Club v. Dep't of Transp. of Hawai'i, 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009) (quoting Liberty Mut. Fire Ins. Co. v. Dennison, 108 Hawai'i 380, 384, 120 P.3d 1115, 1119 (2005)).

## III. Discussion

### A. Lacy's Alleged Conduct Occurred in the "Business Context"

Hawai'i's unfair or deceptive acts or practices statute, HRS § 480-2(a) (2008),[6] prohibits the utilization of

---

[6] HRS § 480-2 provides in relevant part as follows:

(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

(b) In construing this section, the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

. . . .

(d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.

"unfair or deceptive acts or practices in the conduct of any trade or commerce."  The Lacy parties contend that the conduct that the Plehos[7] allege Lacy engaged in did not occur within "trade or commerce" and that it thus falls outside the scope of the prohibition.

This court articulated the standard for identifying conduct in "trade or commerce" within the meaning of HRS § 480-2(a) in the seminal case of Cieri v. Leticia Query Realty, Inc., 80 Hawai'i 54, 65, 905 P.2d 29, 40 (1995).  In Cieri, two property owners utilized the services of their former property manager, who was also a licensed real estate broker, to sell a residence the owners had previously rented out to third-party tenants.  Id. at 56-57, 905 P.2d at 31-32.  Although the property manager had been responsible for maintenance of the property and was thus aware that the outgoing tenants had experienced frequent leaks, flooding, and issues related to plumbing, she indicated in a seller disclosure statement that

---

[7]  To the extent the Pleho parties challenge the circuit court's dismissal of GPLLC's unfair or deceptive acts or practices claim, we hold that the ICA correctly determined that, under HRS § 480-2(d), only a consumer, the attorney general, or the director of the office of consumer protection may bring such a claim.  Because HRS § 480-1 (2008) specifies that only a "natural person" may be considered a "consumer" for purposes of HRS Chapter 480, a business organization like GPLLC is not permitted to bring an unfair or deceptive acts or practices claim under the statute.  By contrast, the Plehos' status as consumers in their personal capacities has not been challenged at any stage of these proceedings.  Our discussion therefore pertains to only the Plehos' claims against the Lacy parties and not those of GPLLC.

there had never been any leaks repaired or problems with the plumbing at the residence. Id. at 57, 905 P.2d at 32. Upon discovering the falsehood, the buyers brought suit against the property manager, alleging inter alia that she had committed an unfair and deceptive trade practice in violation of HRS § 480-2(a). Id. at 57-58, 905 P.2d at 32-33. At trial, a jury found that the property manager had indeed violated the statute and awarded damages. On appeal, the property manager challenged the plaintiff's status as consumers entitled to bring suit under the law. Id. at 58-59, 905 P.2d at 33-34.

Prior to reaching the merits of the argument, this court took the "opportunity to discuss the scope of the applicability of HRS § 480-2, which proscribes 'unfair or deceptive acts or practices in the conduct of any trade or commerce,' as it pertains to the transaction and the defendants at issue in this case." Id. at 59, 905 P.2d at 34 (parenthetical omitted). We traced the development of the statute, noting that the law was modeled after section 5 of the Federal Trade Commission Act, and concluded that "the paramount purpose of both statutes" has always been "to prevent deceptive practices by businesses that are injurious to other businesses and consumers." Id. at 61, 905 P.2d at 36 (quoting Beerman v. Toro Mfg. Corp., 1 Haw. App. 111, 118, 615 P.2d 749, 754 (1980)).

This court observed that Massachusetts courts interpreting their consumer protection statute had distinguished between purely private transactions and transactions between a consumer and a professional or business organization engaging in the commercial field in which the party specializes.  Id. at 63-65, 905 P.2d 38-40 (citing Lantner v. Carson, 373 N.E.2d 973 (Mass. 1978); Begelfer v. Najarian, 409 N.E.2d 167 (Mass. 1980); Lynn v. Nashawaty, 423 N.E.2d 1052 (Mass. Ct. App. 1981); Nei v. Burley, 446 N.E.2d 674 (Mass. 1983)).  We reasoned that the Massachusetts consumer protection statute shared "a common genesis in the federal antitrust statutes" with our own and was thus motivated by a similar impetus.  Id. at 63, 905 P.2d at 38.  This court therefore adopted the Massachusetts courts' test for identifying conduct in "trade or commerce," holding that the key inquiry in determining whether a particular claim falls within the scope of HRS Chapter 480 is whether the conduct at issue occurs within what Massachusetts courts call the "business context."  Id. at 65, 905 P.2d at 40.  We stated that this generally "must be determined on a case-by-case basis by an analysis of the transaction."[8]  Id.  When addressing the specific

---

[8]     The court approvingly cited Begelfer v. Najarian, in which the Massachusetts court set forth relevant factors to be evaluated in determining whether a particular transaction occurred in the "business context." Cieri, 80 Hawaiʻi at 63, 905 P.2d at 38 (citing 409 N.E.2d 167 (Mass. 1980)). "[T]he question whether a transaction took place in a 'business context' . . . require[s] assessment of factors such as: (1) the nature of the transaction;

(continued . . .)

facts of the case, however, the Cieri court determined that it was unnecessary to examine the details of the property manager's conduct because a "broker's or salesperson's role in facilitating every real estate transaction in which he or she participates necessarily involves 'conduct in any trade or commerce,' namely, the systematic sale or brokering of interests in real property." Id. We therefore held that the property manager's conduct in relation to the transaction in which she had actively participated was subject to the requirements of HRS Chapter 480. Id.

As in Cieri, the Plehos and Rnic allegedly retained Lacy specifically to utilize the specialized skills with which he makes his living--that is, to facilitate a commercial transaction of a type with which he purported to have professional expertise. Lacy is alleged to have actively and directly participated in the transaction, offering what was ostensibly his professional appraisal of the value of RLS as well as his opinion as to the profitability of the exchange in order to induce the Pleho parties to consummate the deal. Cf.

---

(. . . continued)

(2) the character of the parties involved; (3) the activities engaged in by the parties; (4) whether similar transactions had been undertaken in the past; (5) whether the transaction was motivated by business or for personal reasons (as in the sale of a home); and (6) whether the participant played an active part in the transaction." Id.

Begelfer, 409 N.E.2d at 176 (holding private investor's loan was not made in the business context where "the record indicate[d] that the defendants' participation in the real estate transaction underlying the loan was minimal," "[t]he defendants had no voice in negotiating the terms of the loan," "[t]he payments were made to an agent and not directly to" the defendants, and the defendants "were solicited by other investors to participate in the loan, and were not active in the management of the loan").  And as in Cieri, Lacy is alleged to have made intentional misrepresentations in order to induce the buyer to complete the exchange.

In Cieri, we held "as a matter of law that a broker or salesperson actively involved in a real estate transaction invariably engages in 'conduct in any trade or commerce,'" making it "unnecessary to engage in a case-by-case analysis" to determine whether the transaction occurred in the business context.  80 Hawai'i at 65, 905 P.2d at 40.  That the defendant in this case allegedly facilitated the sale of a business interest rather than an interest in real property is a distinction without a difference.  Lacy is alleged to have engaged in actions during the sale of RLS analogous to those of the property manager in Cieri.  Accordingly, Lacy's alleged conduct "necessarily" qualifies as conduct in "trade or

commerce" within the meaning of HRS § 480-2(a), and it is therefore subject to the constraints of HRS Chapter 480.  Id.

## B. No Exception to HRS Chapter 480 for the Practice of Law Applies in this Case

Rather than disputing that Lacy's alleged conduct occurred in the "business context," the Lacy parties appear to argue that the practice of law is never conduct in "trade or commerce" within the meaning of HRS § 480-2(a) and is thus categorically exempt from its operation.  As an initial matter, the Plehos dispute that the unfair or deceptive act or practice they allege Lacy committed involves the practice of law because their claim is based on Lacy's participation in the allegedly fraudulent sale and not any deficient legal advice he provided.  Indeed, there is little dispute that, had Lacy simply been a consultant or a similar business professional, many of the services he provided would clearly amount to conduct in trade or commerce under our precedent.  See Cieri v. Leticia Query Realty, Inc., 80 Hawai'i 54, 65, 905 P.2d 29, 40 (1995).

We ultimately need not decide whether Lacy's conduct amounted to the practice of law, however, because we hold that when a defendant engages in the sort of actions we have held "necessarily involve 'conduct in any trade or commerce'" within the meaning of HRS § 480-2(a), it is no defense that those

12

actions constituted or were intermingled with legal services.[9]

Such a reading is supported by the federal precedents the statute specifically instructs us to consider in interpreting the law, as well as our own precedents and the statute's language and legislative history. Further, any concerns that HRS § 480-2(a)'s application to the practice of law in this context would impinge upon this court's authority to regulate the legal profession are unjustified. Accordingly, we hold that the circuit court erred in granting partial summary judgment against the Plehos on their unfair or deceptive acts or practices claim.

### 1. Both the Federal Precedent that We Must Consider and Our Own Caselaw Indicate that Unfair or Deceptive Acts or Practices Liability Applies to Aspects of the Practice of Law.

Our legislature provided significant guidance as to whether HRS § 480-2(a) was intended to encompass aspects of the practice of law by specifically stating <u>twice</u> in the relevant statutory text that courts should consider federal

---

[9] In other instances, whether the challenged conduct occurred during the provision of legal services may be a factor to be considered in the "case-by-case . . . analysis of the transaction" to determine whether it occurred in the business context. <u>Cieri</u>, 80 Hawai'i at 65, 905 P.2d at 40.

Additionally, simply establishing that activity occurs in the conduct of trade or commerce is of course not sufficient to establish an HRS § 480-2(a) violation. Liability is further limited by the requirement that a plaintiff be a consumer or other party entitled to bring an HRS § 480-13 action under HRS § 480-2(d) or (e). <u>Cieri</u>, 80 Hawai'i at 65, 905 P.2d at 40. And the plaintiff must also demonstrate that the complained of actions amounted to an unfair method of competition or an unfair or deceptive act or practice that caused the plaintiff's injury in order to prevail. <u>Kawakami v. Kahala Hotel Inv'rs, LLC</u>, 142 Hawai'i 507, 519, 421 P.3d 1277, 1289 (2018).

interpretations of analogous statutes when applying the law.

HRS § 480-2(b) states that, in interpreting the HRS § 480-2

prohibition on unfair competition and unfair or deceptive acts

and practices, "the courts . . . shall give due consideration to

the rules, regulations, and decisions of the Federal Trade

Commission and the federal courts interpreting section 5(a)(1)

of the Federal Trade Commission Act (15 U.S.C. [§] 45(a)(1)[10]),

as from time to time amended."  (Emphases added.)  Additionally,

HRS § 480-3 (2016) provides that HRS Chapter 480 "shall be

construed in accordance with judicial interpretations of similar

federal antitrust statutes."[11]

---

[10]    15 U.S.C. § 45(a)(1) (2012) provides in full as follows: "(1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."

[11]    The dissent seeks to minimize these clear statutory directives by observing that "[d]ue consideration . . . implies reasoned judgment appropriate to the circumstances."  Dissent at 3.  It further attempts to justify departing from federal precedents applying the FTCA to aspects of the practice of law by misconstruing a generalized observation made in a single 1965 House committee report in the legislative history of HRS Chapter 480, which stated that "courts of Hawai'i must also necessarily give due regard to the problems peculiar or pertinent to the State of Hawai'i."  Dissent at 4 (quoting H. Stand. Comm. Rep. No. 55, in 1965 House Journal, at 539). Seemingly relying on this statement, the dissent summarily asserts that in "Hawai'i, the courts are tasked with determining whether the actual practice of law is subject to [HRS § 480-2(a)] liability."  Dissent at 9-10.  As discussed infra, however, the plain language the legislature employed in enacting HRS Chapter 480 encompasses the business of lawyering on its face, and attorneys are not included in any of the specifically enumerated exceptions the legislature chose to codify.  A court's personal policy judgment regarding local needs is not grounds for reading an exception into a statute that the legislature did not see fit to include anywhere in its text, and even assuming the dissent's cited excerpt is inconsistent with the law's clear directives--including HRS §§ 480-2(b)'s and 480-3's instructions that courts "shall" look to federal precedent to guide their interpretation--it is inoperative.  See State v. Akina, 73 Haw. 75, 78, 828 P.2d 269, 271 (1992)

(continued . . .)

Federal courts have long interpreted section 5(a)(1) of the Federal Trade Commission Act (FTCA) and analogous antitrust statutes to apply to the practice of law. The Supreme Court of the United States considered whether the Sherman Anti-Trust Act (Sherman Act) applied to the practice of law in the seminal case of Goldfarb v. Virginia State Bar, 421 U.S. 773 (1975). In Goldfarb, clients seeking legal services argued that a minimum fee schedule released by a county bar association and endorsed by the state bar association violated section 1 of Sherman Act, 15 U.S.C. § 1, as an agreement in restraint of trade or commerce. Id. at 776. The bar associations contended that, because the practice of law is a "learned profession" that provided necessary services to the community, it did not fall within the intended meaning of "trade or commerce" under the Sherman Act. Id. at 786. The Supreme Court disagreed, holding that neither the learned nature of the profession nor the community service aspects of the practice of law were determinative. Id. at 787.

The Court reasoned that--much like the language of HRS § 480-2(a)--the Sherman Act's reference to "trade or commerce"

---

(. . . continued)

("This court derives legislative intent primarily from the language of statute and follows the general rule that in the absence of clear legislative intent to the contrary, the plain meaning of the statute will be given effect." (quoting State v. Briones, 71 Haw. 86, 92, 784 P.2d 860, 863 (1989))).

was broad by design and meant to sweep in virtually all commercial activity. Id.; see also State by Bronster v. U.S. Steel Corp., 82 Hawai'i 32, 51, 919 P.2d 294, 313 (1996) ("HRS § 480-2, as its federal counterpart in the FTC Act, was constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both consumers and honest business[persons]." (quoting E. Star, Inc. v. Union Bldg. Materials Corp., 6 Haw. App. 125, 132, 712 P.2d 1148, 1154 (1985)) (alteration in original)). The United States Supreme Court held that attorneys fell within the plain meaning of "trade or commerce" and declined to find an implicit exception for their practice that was not articulated in the statute. Goldfarb, 421 U.S. at 787-88. "It is no disparagement of the practice of law as a profession to acknowledge that it has this business aspect," the Court opined before concluding that "[i]n the modern world it cannot be denied that the activities of lawyers play an important part in commercial intercourse." Id. at 788; see also Bates v. State Bar of Arizona, 433 U.S. 350, 371-72 (1977) (stating that "the belief that lawyers are somehow above 'trade' has become an anachronism" because "[i]n this day, we do not belittle the person who earns his living by the strength of his arm or the force of his mind"). Subsequent cases clarified that, by violating section 1 of the Sherman Act,

16

lawyers who engage in anticompetitive practices also violate the prohibition against unfair methods of competition in section 5(a)(1) of the FTCA.  F.T.C. v. Superior Court Trial Lawyers Ass'n, 493 U.S. 411, 422 (1990).

The dissent attempts to distinguish the clear precedents applying section 5(a)(1) of the FTCA to aspects of the practice of law, arguing that the cases in which federal courts have considered the regulation of the legal profession primarily concern unfair methods of competition, not unfair or deceptive acts or practices like those alleged in the present case.  Dissent at 4-6.  But the dissent fails to give due consideration to a number of federal decisions that have stated both directly and by implication that various activities classified as "the practice of law" violate section 5(a)(1) of the FTCA as unfair or deceptive practices.  See, e.g., F.T.C. v. Lanier Law, LLC, 194 F.Supp.3d 1238, 1273-85 (M.D. Fla. 2016) (finding that, notwithstanding their characterization as the practice of law, a law firm and its lawyers' practices directly violated section 5(a)(1) of the FTCA as unfair or deceptive acts or practices and violated administrative rules for which a failure to comply "constitutes an unfair or deceptive act or practice in violation of § 5(a) of the FTC Act"); F.T.C. v. Lucas, No. 10-56985, 2012 WL 4358009 (9th Cir. Sept. 25, 2012) (holding that a lawyer's conduct was an unfair or deceptive

practice in violation of section 5(a)(1) of the FTCA); C.F.P.B. v. Frederick J. Hanna & Assocs., P.C., 114 F.Supp.3d 1342, 1369–70 (N.D. Ga. 2015) (finding that a law firm committed an "unfair, deceptive, or abusive act or practice" in violation of the Consumer Financial Protection Act, 12 U.S.C. § 5536(a)(1)(B), the standard for which "is the same as the standard under § 5(a) of Federal Trade Commission Act.").[12]

Even if this were not the case, however, the dissent offers no meaningful analysis as to why we should distinguish between the unfair methods of competition portion and the unfair or deceptive acts or practices portion of FTCA section 5(a)(1) with respect to what constitutes commercial activity within the scope of the provision. FTCA section 5(a)(1) prohibits both "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." The dissent's position would require us to conclude that federal courts ascribe two different meanings to the phrase "in or affecting commerce" when it occurs twice in the same sentence,

---

[12] The dissent attempts to distinguish these cases on several additional grounds, including by arguing that they "impose[d] liability upon the business or entrepreneurial aspects of the legal profession" rather than the actual practice of law. Dissent at 5-6 & n.6. The federal courts did not rely on such a distinction, however, and in at least one instance explicitly stated that a "practice of law exclusion . . . is not present in the FTC Act." Lanier Law, 194 F.Supp.3d at 1282. And all of these cases are validly citable for their persuasive value. See Federal Rules of Appellate Procedure Rule 32.1 (providing that federal courts' local rules "may not prohibit or restrict" the citation of unpublished opinions issued after January 1, 2007).

with only one of those instances encompassing aspects of the practice of law.[13]

The flaw in this reasoning is even more apparent when we consider our own statute. Unlike FTCA section 5(a)(1), HRS § 480-2(a) does not repeat the phrase qualifying the activities to which it applies; the provision prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices <u>in the conduct of any trade or commerce</u>." HRS § 480-2(a) (emphasis added). The dissent's interpretation essentially amounts to a claim that the Hawai'i legislature intended the phrase "in the conduct of any trade or commerce" to have two different meanings depending on whether it is applied to the first or second subject of the sentence in which it occurs, with only one of those meanings encompassing the practice of law.

Consistent with federal decisions applying FTCA section 5(a)(1) to the conduct of attorneys are a state and federal case that have considered HRS § 480-2 with regard to the

---

[13] HRS § 480-2(b) instructs us to consider not only federal courts' interpretation of section 5(a)(1), but also that of the Federal Trade Commission. The Federal Trade Commission has long used its enforcement authority to pursue administrative remedies against lawyers for unfair and deceptive trade practices and has maintained that "state-regulated professions, including the practice of law, are not and should not be exempted from coverage of the" FTCA. See <u>Heslin v. Conn. Law Clinic of Trantolo & Trantolo</u>, 461 A.2d 938, 942-43 (Conn. 1983) (citing <u>In re Wilson Chemical Co.</u>, 64 F.T.C. 168, 186-87, 190 (1964); Reauthorization of the Federal Trade Commission, 1982 Hearings on S. 1984 Before the Senate Comm. on Commerce, Science, and Transportation, 97th Cong., 2d Sess., 32-36 (letter, by direction of the Federal Trade Commission, of James C. Miller III, Chairman)).

practice of law.  In Hungate v. Law Office of David B. Rosen, the plaintiff brought suit under HRS § 480-2 against the counsel for his mortgage holder, arguing that the attorney had engaged in an unfair or deceptive trade act or practice by conducting a wrongful foreclosure on behalf of the mortgage holder.  139 Hawai'i 394, 400, 391 P.3d 1, 7 (2017).

While we distinguished the role that the attorney had played in the "the instant foreclosure action" from the broker role that the property manager had played in Cieri, we did not hold that the practice of law was categorically exempt from HRS § 480-2 liability.  Id. at 413, 391 P.3d at 20.  We specifically examined the adversarial nature of the proceeding and declined to find the attorney liable "under the circumstances" of that case because subjecting opposing counsel to HRS § 480-2 liability could have a chilling effect on an attorney's ability to zealously advocate for one's own client by imposing a competing duty to party opponents.  We explicitly stated, however, that our solicitude would "not encompass, for example, allowing attorneys to conduct patently illegal activities on behalf of clients."  Id. at 413 n.22, 391 P.3d at 20 n.22.  And we reserved judgment as to whether a then-recent amendment to the Hawai'i foreclosure statute, which made a duly authorized agent of a wrongfully foreclosing mortgagee liable under HRS § 480-2(a) in certain circumstances, could be applied to an

attorney.  Id. at 413 n.23, 391 P.3d at 20 n.23.  This court thus indicated that HRS § 480-2(a) could indeed be applied to the practice of law, albeit under a higher standard than in other trades in some instances.

The dissent now attempts to revise the plain meaning of our statement in Hungate that our holding would not reach a lawyer's "patently illegal activities," arguing that it was merely an acknowledgment that lawyers may be subject to professional discipline and civil and criminal liability from sources other than HRS § 480-2(a).  Dissent at 29-31.  But to construe this pronouncement as only an affirmation that the practice of law is not immune from all other civil and criminal regulation is to reduce our words to a maxim obvious beyond any need for comment.  See Buscher v. Boning, 114 Hawai'i 202, 220 n.13, 159 P.3d 814, 832 n.13 (2007) ("The rule of law that an attorney representing a client may be held personally liable to an adverse party or a third person who sustains injury as a result of an attorney's intentional tortious acts is well settled." (quoting Giuliani v. Chuck, 1 Haw. App. 379, 383-84, 620 P.2d 733, 736-37 (1980))).  No party in Hungate questioned the application of other statutory and common law claims to the legal profession.  Rather, this court indicated that we were addressing the extent of "[o]ur desire to avoid creating unacceptable conflicts of interest in this context"--that is, in

21

the application of HRS § 480-2 to attorney conduct, as was at issue in the case. Hungate, 139 Hawai'i at 413 n.22, 391 P.3d at 20 n.22 (emphasis added). The dissent's interpretation would thus appear to amount to a sub silentio overruling of the standard this court articulated in Hungate.[14]

Hungate concerned an unfair or deceptive acts or practices claim against an opposing counsel rather than a party's own attorney. That the present case involves a suit against a party's own attorney presents an even stronger argument that HRS § 480-2 should be applicable because counsel's duties to act fairly and without deception and to zealously advocate in favor of a client are in alignment rather than in contention.[15] It would follow that Hungate's heightened standard of HRS § 480-2(a) liability would not apply.

_____

[14] Indeed, the dissent's illogical interpretation of the language this court employed in Hungate may be prompted to avoid the incongruities created by its position. If its stance that the practice of law is exempt from the operation of HRS § 480-2 would not overrule Hungate's pronouncement that particularly egregious misconduct may subject an opposing counsel to HRS § 480-2(a) liability, then it appears that it would establish not only an exception to HRS § 480-2(a), but also an exception to the exception, neither of which has any expressed basis in the statute's text or legislative history.

[15] The dissent argues that in Hungate this court "expressly distinguished between real estate brokers and attorneys with regard to" HRS 480-2(a) liability, citing language in which we noted that, unlike a broker, "the role of an attorney involves representing a client's interests against those of an opposing party within an adversary system." Dissent at 23 (quoting 139 Hawai'i 413, 391 P.3d 20). Yet this analysis by the dissent evinces a one-sized view of legal practice and neglects to consider the role attorneys like Lacy may play in commercial transactions in a business context. In Hungate, we observed that real estate brokers are subject to HRS § 480-2(a) liability because "[s]ellers and purchasers of real estate often

(continued . . .)

22

Additionally, at least one federal court interpreting Hawai'i law has suggested that HRS § 480-2(a) can be applied to the conduct of attorneys.  In McDevitt v. Guenther, the U.S. District Court for the District of Hawai'i implicitly acknowledged that HRS § 480-2(a) can be applied to the practice of law by ruling that a plaintiff's claim against an attorney was barred by the statute of limitations--and not any failure to state a claim upon which relief could be granted.  522 F.Supp.2d 1272, 1289 (D. Haw. 2007).

In short, a range of relevant federal precedents exist applying analogous federal statutes to the practice of law, which HRS § 480-2 explicitly states must guide our interpretation of its provisions.[16]  Further, our own caselaw

---

(. . . continued)

utilize and rely on brokers for their expertise and resources, including . . . determining pricing of 'comparables' as a basis for negotiations"--in short, "the role of a broker is to provide clients with expertise and resources in real estate transactions."  139 Hawai'i at 412-13, 391 P.3d 19-20 (some quotations omitted).  Here, Lacy was retained for the specific purpose of providing expertise and resources in a commercial transaction, including by providing his opinion regarding the pricing of RLS as compared to comparable businesses.  The alleged conduct by Lacy that the Plehos now challenge is analogous to the acts that this court held in Cieri "necessarily" constitute conduct in trade or commerce, and it is unlike that of an opposing counsel conducting a foreclosure.

[16]    The dissent makes much of decisions by state courts in other jurisdictions holding that their consumer protection statutes contain an implicit exception for "the actual practice of law."  Dissent at 8-12.  To be sure, we have in the past turned to interpretations of other states' consumer protection statutes for guidance in interpreting our own based on their "common genesis in the federal antitrust statutes."  Cieri, 80 Hawai'i at 63, 905 P.2d 38.  But we have done so only when the decisions are not directly contrary to this court's own precedent and the federal sources the statute

(continued . . .)

indicates that HRS § 480-2 can be applied to aspects of the practice of law.  Such a result is unsurprising given the plain language and legislative history of the statute.

**2. The Plain Text and Legislative History of HRS Chapter 480 Make Clear It Was Intended to Encompass Aspects of the Practice of Law When the Conduct Occurs Within Trade or Commerce.**

As stated, HRS § 480-2 provides that, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  The statute expressly encompasses acts or practices in "the conduct of any trade or commerce," which by its plain meaning places within its ambit virtually all activity occurring in the business context. HRS § 480-2(a) (emphasis added); Bronster, 82 Hawai'i at 51, 919 P.2d at 313 (stating that the legislature "constructed [HRS § 480-2] in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both consumers and honest business[persons]." (quoting E. Star, 6 Haw. App. at 132, 712 P.2d at 1154) (alteration in original)); cf. Kalaeloa Ventures,

_____

(. . . continued)

expressly instructs us to consider.  Further, even were we to turn to other state decisions to guide our analysis, the state statute that we have expressly held to be analogous to our own--indeed, the statute from which we derived our test regarding the specific issue at the heart of this case, see id. at 63-65, 905 P.2d 38-40--is Section 2 of Massachusetts's consumer protection statute, which the dissent acknowledges is interpreted by Massachusetts courts to apply to the practice of law.  Dissent at 12 (citing Brown v. Gerstein, 460 N.E.2d 1043 (Mass. App. Ct. 1984)).  The dissent's reliance on the decisions of other states' courts is thus unavailing.

LLC v. City & Cty. of Honolulu, 143 Hawaiʻi 103, 108, 424 P.3d 458, 463 (2018) (HRS §§ 1-29 and 1-32 by their plain language of "any act" encompass all possible acts appointed by law to be done on a particular day); Allstate Ins. Co. v. Pruett, 118 Hawaiʻi 174, 181, 186 P.3d 609, 616 (2008) ("[B]y itself, the term 'any person,' 'encompass[es] every possible individual . . . .'" (second alteration in original) (citation omitted)). Regardless of whether it is characterized as the practice of law, facilitating the sale of one business to another falls within the plain meaning of conducting trade or commerce under even the strictest application of the terms.[17]

Notwithstanding HRS § 480-2(a)'s unequivocal language, the dissent concludes that "the plain language . . . of HRS § 480-2 reveal[s] no indication" that the legislature intended the statute to apply to attorney conduct. Dissent at 27. The dissent goes on to argue that the legislative history of HRS § 480-2 also does not support extending it to the practice of law

---

[17] The dissent attempts to bolster its position by incorrectly claiming that our holding will "impose [HRS § 480-2] liability upon all aspects of the practice of law," and then speculates that such an interpretation will render malpractice insurance prohibitively expensive. Dissent at 34. The question of whether other aspects of the practice of law occur in the business context is not before us, and we need not now decide the extent of lawyer conduct that is subject to HRS Chapter 480. Yet, as the dissent itself recognizes, Massachusetts's consumer protection statute, which has been held to apply to attorney conduct, is not "broad enough to reach any type of commercial exchange." Dissent at 34 n. 23. The dissent's misgivings about the potential reach of our decision are thus unfounded.

because the legislature has had ample opportunity to amend the law to explicitly include lawyers and has not done so. Dissent at 27 n.18.

But this is the opposite of the analysis called for by standard principles of statutory construction. The law also does not expressly state that it applies to carpenters, bakers, travel agents, or shoe salespersons--notwithstanding the ample opportunity the legislature has had to add explicit mention of each. Yet, like lawyers, these professions are covered by HRS § 480-2 because they fall within the plain meaning of "any trade or commerce." "[W]here the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning." State v. Wheeler, 121 Hawaiʻi 383, 390, 219 P.3d 1170, 1177 (2009) (quoting Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of City & Cty. of Honolulu, 114 Hawaiʻi 184, 193, 159 P.3d 143, 152 (2007)). "[W]e are not at liberty to look beyond that language for a different meaning." Alvarez v. Liberty House, Inc., 85 Hawaiʻi 275, 278, 942 P.2d 539, 542 (1997) (quoting Ross v. Stouffer Hotel Co. (Hawaiʻi) Ltd., 76 Hawaiʻi 454, 461, 879 P.2d 1037, 1044-45 (1994)).

Further, that it was the legislature's intention that HRS Chapter 480 apply to lawyers is evidenced by the legislature's failure to explicitly exclude attorneys, as it has done with labor organizations, HRS § 480-10; fishery,

26

agricultural, or consumer cooperative organizations, HRS § 480-11(a); and social service providers, HRS § 480-11(d).  The dissent would have us infer a similar exception for attorneys from the legislature's inaction.  Dissent at 27 n.18.  But legislative inaction is a notoriously poor barometer of legislative intent--even when we can assume the legislature is aware a statute is being misinterpreted.  See Zuber v. Allen, 396 U.S. 168, 185 n.21 (1969) (stating that, legislative inaction cannot be used to justify an agency's invalid statutory interpretation because it may reflect "unawareness, preoccupation, or paralysis" rather than intention).  The flaw in this approach is even more pronounced here, when the legislature had no reason to believe Hawaiʻi courts would not interpret HRS § 480-2(a) to encompass lawyers in accordance with the plain text of the statute.  In other words, the dissent would have us conclude that the legislature assumed courts would infer an implicit exception to HRS Chapter 480 that does not appear in the statute, and that the legislature ratified this interpretation in advance by not acting to correct such a ruling before it occurred.

But it is well settled that the principle of expressio unius est exclusio alterius "applies equally to a statutory list of exceptions."  Adams v. CDM Media USA, Inc., 135 Hawaiʻi 1, 18-19, 346 P.3d 70, 87-88 (2015).  "The 'proper inference' from a

27

list of exceptions to a statute is that the legislature 'considered the issue of exceptions and, in the end, limited the statute to the ones set forth.'" Id. (quoting United States v. Johnson, 529 U.S. 53, 58 (2000)); see also Goldfarb v. Virginia State Bar, 421 U.S. 773, 787 (1975) ("[O]ur cases have repeatedly established that there is a heavy presumption against implicit exemptions." (citing United States v. Phila. Nat'l Bank, 374 U.S. 321, 350—351 (1963); California v. Fed. Power Comm'n, 369 U.S. 482, 485 (1962)). This court may not take it upon itself to add an additional exception that the legislature has declined to adopt.[18]

### 3. Applying HRS Chapter 480 in this Context Does Not Threaten this Court's Authority to Regulate the Legal Profession.

Significantly informing and underlying the ICA's interpretation of HRS § 480-2(a) were concerns that applying the unfair or deceptive acts or practices prohibition to attorneys would undermine this court's longstanding role in regulating attorney misconduct, which the dissent now similarly asserts. Dissent at 24-29. To be sure, concerns for the separation of powers might arise if the legislature attempted to directly

---

[18] It bears repeating that in interpreting the language of HRS § 480-2(a), HRS § 480-2(b) directs us to "give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the [FTCA], as from time to time amended." Federal courts have not inserted a practice of law exception into the FTCA that is not contained in the plain text of the statute.

interfere with this court's regulation of the practice of law by, for example, overriding the promulgated professional rules or depriving this court of its ultimate disciplinary authority for professional misconduct.  See Office of Disciplinary Counsel v. Kagawa, 63 Haw. 150, 155, 622 P.2d 115, 119 (1981) ("In deciding whether disciplinary sanctions would be appropriate against an attorney, we emphasize that . . . the Hawaii Supreme Court is the ultimate trier of fact as well as the law.").  HRS § 480-2 is not such a law, however.

The law's prohibition on unfair or deceptive acts is wholly consistent with our professional rules.  See Hawai'i Rules of Professional Conduct (HRPC) Rule 8.4(c) (prohibiting "conduct involving dishonesty, fraud, deceit or misrepresentation").  Further, HRS § 480-2(a) serves additional purposes wholly separate from the regulation of professional conduct.  Our professional rules are designed to protect the integrity of the legal profession and the dignity of the courts.  See Office of Disciplinary Counsel v. Lau, 79 Hawai'i 201, 207, 900 P.2d 777, 783 (1995).  By contrast, the unfair or deceptive acts or practices statute by its own terms applies to "unfair or deceptive acts or practices in the conduct of any trade or commerce."  HRS § 480-2(a) (emphasis added).  It regulates commercial activity generally, protecting the integrity of Hawai'i's economic environment as a whole and not targeting

specific professions.[19]  And by creating civil liability, the law provides a mechanism for offering full redress to the <u>victims</u> of unfair and deceptive business acts--an objective our professional rules were not designed to achieve.  See <u>Cieri</u>, 80 Hawaiʻi at 60, 905 P.2d at 35 (noting statements by the legislature indicating the statute was enacted to "enjoin unfair and deceptive business practices by which consumers are defrauded and the economy of the State is harmed" (quoting H. Stand. Comm. Rep. No. 55, in 1965 House Journal, at 538)); <u>Short v. Demopolis</u>, 691 P.2d 163, 168 (Wash. 1984) ("The injured client can take little comfort from the fact that the wrongdoer has been reprimanded or suspended or stripped of the right to practice his profession." (quoting Comment, <u>The Washington Consumer Protection Act vs. The Learned Professional</u>, 10 Gonz. L. Rev. 435, 436 (1975))).  The dissent is therefore mistaken in labeling the application of HRS § 480-2(a) liability in this context as "duplicative and unnecessary."  Dissent at 33.

---

[19]    Because the unfair or deceptive acts or practices statute is a regulation of general applicability, we need not decide in this case whether directly regulating the legal profession is an exclusive power of the judicial branch.  <u>But see, e.g.</u>, HRS § 605-1(c)-(d) (2016) (setting forth qualifications for admission to the bar in addition to those prescribed by this court); HRS § 605-7 (2016) (requiring written authorization from a client for an attorney to compromise, arbitrate, or settle a claim); <u>Heslin v. Connecticut Law Clinic of Trantolo & Trantolo</u>, 461 A.2d 938, 945 (Conn. 1983) (concluding that the regulation of attorney conduct is in at least some respects a shared power of the judicial and legislative branches).

Indeed, taking the dissent's position that subjecting lawyers to HRS § 480-2(a) would interfere with this court's regulation of the practice of law to its logical conclusion would lead to illogical results. For example, the rendering of legal advice clearly amounts to "the practice of law" under our precedents. See Fought & Co. v. Steel Eng'g & Erection, Inc., 87 Hawai'i 37, 45, 951 P.2d 487, 495 (1998) (citing Sen. Stand. Comm. Rep. No. 700, in 1955 Senate Journal, at 661). Yet few would argue that a lawyer who advises a client as to how to conceal a crime and evade capture does not commit a crime in the lawyer's own right. No implicit exception for the practice of law exists in the criminal statutes prescribing accomplice liability or prohibiting the hindrance of prosecution. See HRS § 702-221(c); HRS § 710-1029. Advising a client as to how to commit or conceal a crime would undoubtedly subject the attorney to professional discipline. See HRPC Rule 1.2(d). But such advice would also give rise to criminal liability, and this separate and distinct liability does not interfere with this court's regulation of the practice of law.

HRS § 480-2(a) is no different. A lawyer who engages in unfair or deceptive practices towards a client may be subject to professional discipline under the HRPC. See HRPC Rule 8.4(c). And that same conduct can give rise to separate and distinct civil liability under the HRS § 480-2 without

31

interfering with this court's disciplinary authority or regulation of the legal profession.  See In re Disciplinary Bd. of Hawai‘i Supreme Court, 91 Hawai‘i 363, 370, 984 P.2d 688, 695 (1999) ("Evidence underlying a violation of a disciplinary rule might also be evidence that would support civil or criminal liability, but determinations about civil or criminal liability are the province of the trial courts, not the [Office of Disciplinary Counsel] or the Disciplinary Board.").

In sum, the dissent theorizes that HRS § 480-2(a)'s application to the practice of law would invade this court's inherent authority to regulate the legal profession.  But allowing the legislature to provide a mechanism for protecting the integrity of Hawai‘i's economy and compensating consumers that are harmed by a lawyer's unfair or deceptive business acts serves a separate purpose from our regulation of professional conduct, and it does not undermine or conflict with our professional rules.  Accordingly, there is no reason to infer an implicit exception that has no basis in the text or legislative history of the statute, nor in the federal case law that the legislature has specifically stated should guide our interpretation.

## IV. Conclusion

The facts in this case indicate that Lacy's alleged conduct occurred in the conduct of trade or commerce, and Lacy's

status as an attorney offers no shield to HRS Chapter 480 liability merely because the alleged conduct constituted or was comingled with legal services.  Accordingly, we vacate that portion of the ICA's judgment on appeal that affirms the circuit court's grant of partial summary judgment on the Plehos' unfair and deceptive acts or practices claim, vacate the circuit court's grant of partial summary judgment on this claim, and remand the claim to the circuit court for a determination of whether Lacy's alleged conduct and the Plehos' resulting loss satisfies the elements necessary for recovery under HRS Chapter 480.

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

